## THE BRIDGEPORT LAND AND TITLE COMPANY *vs.* THE GEORGE ORLOVE COMPANY ET ALS.

Third Judicial District, New Haven, January Term, 1917.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The law is well settled in this State that the condition of a mortgage must be such that its record will give reasonable notice of the incumbrance thereby sought to be created.

In the present case the condition, after reciting that the grantor was unable at that time to deliver "certain flour" purchased of him by the grantee, in consequence of which the grantee might suffer a loss, provided that if the grantor should save the grantee harmless from loss within eighteen months from that date, the deed should be void, otherwise in full force and effect. *Held* that this condition was too vague and indefinite to render the deed effectual against subsequent incumbrances, as it gave no precise information either as to what had been agreed upon or as to the maximum amount of the obligation to be secured.

Argued January 25th—decided February 21st, 1917.

SUIT to foreclose a mortgage of real estate, brought to and tried by the Superior Court in Fairfield County, *Gager, J.;* facts found and judgment rendered for the plaintiff, and appeal by two of the defendants holding a subsequent mortgage, for alleged error of the trial court in fixing the order or precedence in which they were required to redeem. *No error.*

*Harry L. Edlin,* for the appellants (defendants Portnov and the First-Bridgeport National Bank).

*Robert E. DeForest,* for the appellees (defendants Saltman Brothers).

RORABACK, J. This action was instituted to foreclose a mortgage made by the defendant Orlove Company to one Louise Frederick, on a certain piece of

land owned by the Orlove Company and located in the town of Fairfield. The defendants were The George Orlove Company, Selig Portnov, Herman Saltman, Benjamin Bernstein and Max W. Dick (copartners in business under the firm name of Saltman Brothers), The New Rockford Milling Company, and the First-Bridgeport National Bank. The amount of the mortgage was not disputed.

The single question made upon the trial of the case in the Superior Court was upon the place to be given to the defendant Portnov in the order of redemption. This controversy arose as between the defendant Portnov and his assignee, the Bridgeport National Bank, on the one hand, and the defendants Saltman Brothers on the other.

It was conceded that the question as to Portnov's priority of right to redeem turned solely upon the effect of the condition in the Portnov mortgage, which was in the following words: "The condition of this deed is such, that whereas the said grantor is unable at the present time to deliver unto the said grantee certain flour purchased by the said grantee of the said grantor, and whereas said grantee may suffer a loss on account of the inability of the said grantor to deliver said flour unto the said grantee, as aforesaid, now therefore, if said grantor shall save said grantee harmless from loss within eighteen months from this date then this deed shall be void otherwise to remain in full force and effect." The trial court held that this condition was too vague and indefinite to protect the mortgagee as against subsequent incumbrances, and that Portnov, in the order of redemption, should be placed next after the owner of the equity of redemption.

No principle of law is more firmly established in this State than that the condition of a mortgage must be so drawn that the record of it will give reasonable

notice of the incumbrances upon the land affected thereby.

In the case of *Pettibone* v. *Griswold*, 4 Conn. 158, the condition of the mortgage deed was that "if the said Giles Griswold, his executors, &c. should pay said grantee one note of even date therewith, executed to said grantee, for 4,000 dollars, payable in six months, at the Hartford bank, and all other notes the said grantee might endorse, or give, for said Griswold, at the bank or elsewhere, and all receipts said Pettibone, deceased, might hold against the said Griswold, then said deed to be void." This court, in relation to this situation, said that "a creditor is not obliged by law to make inquiry *in pais*, concerning the liens on the property of his debtor; but on application to the record, he may acquire all the information, which his interest demands. At least, he must have the power of knowing from this source, the subject-matter of the mortgage, that his investigation may be guided, by something, which will terminate in a certain result. And what is not of less importance, the incumbrance on the property must be so defined, as to prevent the substitution of every thing, which a fraudulent grantor may devise, to shield himself from the demands of his creditors." It was held in the case quoted that the deed was void as against the creditors of the mortgagor.

It was said in *North* v. *Belden*, 13 Conn. 376, that "to render a mortgage valid, as against the creditors of the mortgagor, the real nature of the transaction, so far as it can be disclosed, must appear upon the record, with reasonable certainty, or at least the record must point out a track, by pursuing which the enquirer may ascertain it."

This doctrine was followed in the case of *Hart* v. *Chalker*, 14 Conn. 77, 79. In that case the note referred to in the condition of the mortgage deed did

not specify the amount; and the court said that such a mortgage was not a valid security as against subsequent incumbrances. On page 81 it is said: "Should such a description be held sufficient, our records would hereafter convey but little information as to the real state of the incumbrances on real estate. Instead of that definite and precise intelligence they were designed to convey, general and loose descriptions would be given, and the inquirer would have to depend upon the good faith of the parties rather than upon the public records. . . . It is far better that one honest creditor should have his security postponed to another perhaps equally honest, who has apparently a subsequent title, rather than that the valuable provision of our statute relative to the recording of deeds should be nullified, or its vitality impaired." See also *Balch* v. *Chaffee*, 73 Conn. 318, 47 Atl. 327.

Applying these principles to the case now before us, it is plain that the condition in the mortgage deed to Portnov is too indefinite to be effectual as against subsequent incumbrances. The expression "certain flour" conveys no definite information as to what was agreed upon, and fixes no maximum to the obligation sought to be secured. This cannot be ascertained by reference to anything pointed out in the mortgage deed. A creditor seeking information as to the amount of this incumbrance would receive no intelligence from the record of this instrument. He would have to rely upon parol evidence, which of necessity would be furnished by the parties to the mortgage. Reliance would have to be placed upon this kind of testimony rather than upon the land records of the town. Such a situation might lead to fraudulent and iniquitous attempts to defraud bona fide creditors and those holding subsequent incumbrances.

The Superior Court properly decided as to the rights

of the defendants in its decree of foreclosure. To have held otherwise would have been to violate the well-settled principles which we have adopted in relation to our registry system of deeds.

There is no error.

In this opinion the other judges concurred.