JOSEPH SWAYE *v.* MICHAEL J. MURPHY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 6—decided April 4, 1940.

*David A. Wilson,* with whom was *Leon J. Greenberg,* for the appellants (defendants).

*Walter F. Foley,* for the appellee (plaintiff).

BROWN, J. In this action for the foreclosure of a construction mortgage given by the defendant Murphy to the plaintiff, the sole question is whether the final payment of $960 made by the plaintiff to Murphy under the mortgage is valid as against the other defendants, who are subsequent incumbrancers. The finding with such corrections as the defendants are entitled to contains these facts material to the decision: Incident to the intended construction of a $12,800 house on his land in West Hartford, the defendant Murphy on February 2, 1937, gave the plaintiff his note for $7000 secured by a mortgage of the premises, whereby the plaintiff was to advance funds from time to time as the erection of the house which Murphy agreed to build progressed, the final payment of $960 to be made "when the house is complete and certificate of occupancy issued." On February 3, 1937, the defendant Murphy was indebted on a $750 second mortgage on the premises, which mortgage is now owned by the defendant Realty Company. This corporation is owned by the defendant Lumber Company, which utilizes it to handle its real estate holdings. On February 14, 1938, the Lumber Company attached

the premises to secure its claim of $5699.40 for materials furnished for this and another house built by the defendant Murphy. On January 26, 1939, the Realty Company started to foreclose its mortgage, acquiring title thereunder on March 22, 1939, for itself and as trustee for the Lumber Company, subject to the plaintiff's mortgage. Four days after the bringing of that foreclosure the present action was instituted.

All of the payments have been made by the plaintiff to Murphy under the $7000 mortgage. At the time this was executed it was agreed that Murphy should construct on the premises a seven room house of a type and layout stated, in accord with specifications also agreed upon, which contemplated a completed house lighted by electricity but did not include an oil burner for heating, the carrying out of the details being left to Murphy's discretion. After inspecting the house which then appeared to him to be substantially completed, the plaintiff in good faith made the final payment of $960 to the defendant Murphy under the mortgage. When this was made the heating unit which was designed exclusively for oil had been installed with the exception of the oil burner itself. The installation of this would cost $150 and has never been made. Furthermore, certain electric fixtures and ground wires had not been installed, nor had the permanent electric meter been put in or the wires leading to the house to supply current from the lines of the electric company. No certificate of occupancy has ever been issued, and the house has never been completed to the point where such a certificate can be obtained from the building department of West Hartford. Without it the house cannot be occupied.

The court concluded that the house had been substantially completed and the work done in accordance with the terms of the note; that the issuance of a

certificate of occupancy was not a condition precedent to the making of a final payment on the mortgage; and that the total amount of the mortgage with inter- est was due the plaintiff. Since the facts in the finding as corrected are sufficient to support the court's first conclusion, the question determinative of the case is whether under the circumstances shown of no occu- pancy permit ever issued, the plaintiff is entitled under his mortgage to priority over the claims of the defend- ant companies as to the $960 payment. This depends upon the effect of the applicable principle that the spirit of our recording system requires that the record disclose with as much certainty as possible under the circumstances, the real state of the incumbrances on the property.

In a case of this nature the difficulty in according priority to such an advance does "not arise out of the reliance of the individual purchaser, incumbrancer or creditor upon the apparent state of the mortgage in- debtedness in a particular case, but out of the invasion of that requirement of reasonable certainty which we have always attached to such mortgages. It was long ago said that 'our recording system, in its spirit, re- quires that the record should disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property. . . . reasonable notice of the incumbrance should be given by the record . . . if it is intended to secure a debt not ascertained, such *data* must be given re- specting that debt as will put anyone interested in the inquiry, upon the track leading to its discovery: and if given to secure . . . future liability, the foun- dation of such liability must be set forth.' *Hart* v. ·*Chalker,* 14 Conn. 77, 79." *Stein* v. *Davidson,* 110 Conn. 4, 11, 147 Atl. 1. "The rule . . . is, that the mortgage deed should show by its record the real

nature of the debt or transaction involved so far as it can be disclosed, and enable a creditor or other person interested to determine the real facts, or at least suggest some means of determination." *Lampson Lumber Co.* v. *Chiarelli,* 100 Conn. 301, 306, 123 Atl. 909; *North* v. *Belden,* 13 Conn. 376.

In this case the mortgage as recorded disclosed the definite and explicit agreement between the plaintiff and the defendant Murphy to be that the final payment of $960 would not be made to the latter under the mortgage, until the house was "complete and certificate of occupancy issued." In view of this language, payment of the $960 either before the completion of the house or before the issuance of the certificate, would constitute a departure from the express provisions of the contract. While the court has found that the house was substantially completed, it is undisputed that the occupancy permit was never issued. This being so, under the established law of this state the first mortgage affords no security for a payment so made, as against the liens of the defendants who are subsequent incumbrancers. To hold otherwise would result in "the invasion of that requirement of reasonable certainty" which under the authorities above cited is not permissible, for as we said in deciding the *Stein* case at page 12: "It is obvious that if a mortgagee holding such a mortgage as the one before us may anticipate at will the times when the payments become due under it, the terms of the mortgage and the pursuit of the method of inquiry suggested by it will wholly fail to disclose the amount of the incumbrance at any given time or the amounts which still are to be paid under it. The mortgagee who .anticipates the times of payment specified cannot be permitted to include in the mortgage debt advances so

made unless the work has later been carried on to the stages designated for such payments."

Had the agreement in the present case made the $960 payment dependent only upon the completion of the house, the court's valid conclusion that it was substantially completed, would have entitled the plaintiff to priority. But the added provision that the $960 should not be advanced until a certificate of occupancy had also issued, indicated to subsequent incumbrancers not only that the payment was not to be made until this further condition was met, but also that the records of the town building authority were the proper place to ascertain whether it had been complied with. Involving, as the issuance of such a certificate does, action by the official charged with this duty which becomes a matter of public record, it is comparable to the issuance of an architect's certificate upon which payments are often made contingent in building contracts. In such cases the issuance of the certificate is held to be a condition precedent to the right of payment. *Clover Mfg. Co.* v. *Austin Co.*, 101 Conn. 208, 213, 125 Atl. 646. Under the circumstances here, the plaintiff has no reason to complain at being held to the language of his own recorded agreement. As the above quoted authorities show, the rule determining this result is not predicated upon actual loss to a subsequent incumbrancer in a particular case but upon our general policy requiring reasonable certainty of the record.

There is error and the case is remanded with direction to enter judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.